UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| PAMELA J. BILEK, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 10-13-DCR |
| V. | ) | |
| JOHN ANTHONY BURRIS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant John Anthony Burris' Motion to Dismiss [Record No. 13] Burris asserts that the plaintiffs' complaint should be dismissed for: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient service of process; (5) failure to state a claim upon which relief can be granted; and (6) failure to join an indispensable party. The Court held a hearing on the matter on September 3, 2010. Having considered the briefs and evidence, the Court will grant Burris' motion.

**I.      Background**

The facts of this case are long, convoluted, and fervently disputed. At its essence, the case centers around a horse deal gone bad. Pamela Bilek is now suing Burris for fraud in connection with the original deal and three other claims — breach of contract, breach of fiduciary duty, and unjust enrichment — arising from subsequent transactions. In a fifth claim, for declaratory judgment, Bilek is joined by Plaintiffs Bilek Family Trust, Bilek Quarter Horses, LLC, Tami Lee Napier, Troy Kenneth Napier, and Overhauser & Lindman, LLC (collectively,

with Bilek, "the Declaratory Judgment Plaintiffs"). The Declaratory Judgment Plaintiffs' action precisely mirrors a state court action Burris filed against them in Texas.

The relevant facts begin in 2008. At that time, Burris was working in Texas as the horse and farm manager for Charles and Janie Pircher. The Pirchers owned a horse, named Huntin' for Chocolate ("HFC"), that was stabled at Gumz Farms in Union County, Kentucky. In March 2008, as part of the arrangement between Burris and the Pirchers, HFC's semen was shipped to another farm — Devitt's Farm in Shelby County, Kentucky — to breed to a mare owned by Burris, named Miss Kitty Deluxe ("MKD"). MKD was later moved to Gumz Farms where expenses associated with her care were billed to the Pirchers' account.

In late 2008, Burris initiated contact with Bilek to facilitate her purchase of horses from the Pirchers. Burris aided in the negotiation of a joint venture between Bilek and the Pirchers that included HFC and about thirty other horses (collectively "the JV Horses"). In February 2009, Bilek paid $1.3 million for a 50% interest in the JV Horses. The JV Horses that were at the Pirchers' farm in Texas were moved to California where Bilek resided. The JV Horses that were at Gumz Farms in Kentucky — including HFC — remained there. As part of the deal, Burris allegedly signed a one-year employment contract with Bilek and moved to California to train the horses. In this capacity, Burris was also given money by the Pirchers to operate their portion of the joint venture. In March 2009, allegedly at Burris' request, Gumz Farms transferred all horses then on the Pirchers' account — including MKD, which was still owned by Burris — to an account billable to Bilek. Shortly thereafter, in April 2009, MKD foaled.

Bilek alleges that Burris instructed Gumz Farms to breed HFC to MKD again, and MKD and her foal remained on Bilek's account.

In the summer of 2009, Bilek became aware of a number of problems with the JV Horses. She learned that HFC was encumbered by a $650,000 lien. She also learned that some of the horses had physical and genetic defects. In September 2009, Bilek learned that MKD had been on her expense account at Gumz Farms, allegedly without authorization. She instructed Amy Gumz to remove MKD and her foal from Bilek's account.

Bilek claims that, in October 2009, before the term of his one-year contract had ended, Burris left California and was hired by Thomas Corea — his former attorney in this case — in Texas. At this point, the relationship between Bilek and Burris began to break down. In January 2010, Burris moved MKD from Gumz Farms back to Devitt's Farm. Subsequently, Bilek alleges that MKD foaled in the spring of 2010. In March, Burris filed suit against Bilek and the other plaintiffs in Texas state court, alleging defamation and thirty-three other claims. Bilek removed the case to federal court on April 9, 2010, and Burris voluntarily dismissed on April 12, 2010. He re-filed his action in Texas on April 19, 2010. In the meantime, Bilek and the other plaintiffs filed this case on April 13, 2010.

**II.     Analysis**

The Plaintiffs' complaint has multiple jurisdictional defects. Ultimately, this case does not belong in Kentucky. While some of the factual issues of the case center on horses — HFC and MKD — that are located in Kentucky, none of Burris' actions took place in Kentucky. Few, if any, of Burris' actions were even aimed at Kentucky. At most, his actions, which took

place in either Texas or California, tangentially affected the value of property in Kentucky. That is not enough to bring him into court in Kentucky. There is no personal jurisdiction over Burris on three of Bilek's claims. And the claim that remains is in the improper venue. Additionally, the Court will decline to exercise its jurisdiction over the plaintiffs' declaratory judgment action. In summary, the Court will dismiss the plaintiffs' complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue.

### A. Declaratory Judgment Act

As a preliminary matter, the Court will decline to exercise its jurisdiction over the plaintiffs' action for declaratory judgment. The plaintiffs have requested that the Court examine their potential liability on thirty-four different claims, each dependent on Texas state law. It is well-settled that district courts have discretion "in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Fallas Co.*, 515 U.S. 277, 282 (1995); *see Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996). The Declaratory Judgment Act "confers discretion on courts, not rights on litigants[,]" and "the propriety of issuing a declaratory judgment may depend on equitable considerations." *American Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (citing *Green v. Mansour*, 474 U.S. 64 (1985)). "[W]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate." *Id.* Therefore, even when the Court may otherwise exercise jurisdiction, it is "under no compulsion" to do so. *Wilton*, 515 U.S. at 278.

The Sixth Circuit has identified several factors which guide a district court in determining whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act. Those factors include:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Aetna*, 74 F.3d at 687 (quoting *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). However, this list is not exhaustive. "[T]he Court must make a full inquiry into all relevant considerations." *Brotherhood Mutual Insurance Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002).

In considering all relevant factors, the Court will decline to exercise its discretionary jurisdiction over the plaintiffs' request for declaratory judgment. The facts of this particular case indicate that the plaintiffs are using this remedy for the purpose of "procedural fencing" and to "provide an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326. The plaintiffs' thirty-four requests for declaratory judgment mirror the claims against them in Burris' state court action. The present complaint was filed the day after the state court action was voluntarily dismissed and six days before it was re-filed. The Court's resources are not best utilized by litigating thirty-four counts that arise under Texas law. Further, none of these claims arose in Kentucky or bear any relation to the Commonwealth. Each request for declaratory judgment presents complex factual issues and is paralleled by a state court action. *See American Home*

*Assurance Co.*, 791 F.2d at 64. As such, declaratory judgment would be inappropriate, and the Court will decline to exercise its discretionary jurisdiction over this matter.

## B. Personal Jurisdiction

The Court also lacks personal jurisdiction over Burris for three of Bilek's claims. In a suit based on diversity jurisdiction, personal jurisdiction over a defendant is determined by the law of the forum state. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972). The Court may exercise personal jurisdiction only if two criteria are met: the defendant falls within the forum's long-arm statute and the exercise of jurisdiction does not offend the defendant's right to due process. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Kentucky courts have construed the state's long arm statute to extend to the limits of the Due Process Clause. *See Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992). Therefore, under Kentucky law, the two inquiries merge and the Court need only examine whether the assertion of personal jurisdiction violates constitutional due process. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996).

To satisfy due process requirements, a plaintiff must show that the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Those minimum contacts are measured by a defendant's conduct and connection with the forum state — the Court must ultimately analyze whether those contacts are such that he should

reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant must "purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The Sixth Circuit has consistently applied a three-step test in determining whether the exercise of personal jurisdiction complies with due process.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indust., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). In this case, it is clear that Burris has, in limited circumstances, availed himself of the privilege of acting in Kentucky. He has some contacts with the state. The ultimate question is whether any of Bilek's claims arise from those limited contacts.

The plaintiff bears the burden of establishing that jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). When, as here, the Court has held an evidentiary hearing on the issue, the plaintiff must establish more than a prima facie case; she must show that jurisdiction is proper by a preponderance of the evidence. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). The plaintiff must also show that jurisdiction is proper concerning each claim. *See Suncoke Energy, Inc. v. Man Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 217 (6th Cir.

2009) (White, J., concurring) ("I agree with Judge Rogers that personal jurisdiction must be proper as to each claim."); *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-977, 2009 U.S. Dist. LEXIS 11023, at *42 (N.D. Ohio Feb. 13, 2009) ("Personal jurisdiction is analyzed as to each claim against each Defendant."); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Therefore, the Court will look at each of Bilek's remaining claims to determine whether jurisdiction is proper.

### 1. General Jurisdiction

It is important to first note that Burris is not subject to general personal jurisdiction in Kentucky. General jurisdiction exists when a defendant's contacts with the forum state "are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). After a review of the pleadings and evidence, the Court finds no question that Burris' contacts with Kentucky were not "continuous and systematic." *Id.* At the hearing, Burris admitted that he had been to Kentucky two or three times to judge horse shows. He came to Gumz Farms on two occasions to visit the JV Horses. [Hr'g Tr., p. 40, Sept. 3, 2010] He occasionally called Gumz Farms to discuss the horses. [Hr'g Tr., p. 33] He admitted to receiving bills from Gumz Farms while he was Bilek's employee. [Hr'g Tr., p. 75–76] These random, fortuitous, and attenuated contacts fail to amount to the kind of "continuous and systematic" purposeful availment that is required to establish

2009) (White, J., concurring) ("I agree with Judge Rogers that personal jurisdiction must be proper as to each claim."); *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-977, 2009 U.S. Dist. LEXIS 11023, at *42 (N.D. Ohio Feb. 13, 2009) ("Personal jurisdiction is analyzed as to each claim against each Defendant."); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Therefore, the Court will look at each of Bilek's remaining claims to determine whether jurisdiction is proper.

### 1. General Jurisdiction

It is important to first note that Burris is not subject to general personal jurisdiction in Kentucky. General jurisdiction exists when a defendant's contacts with the forum state "are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). After a review of the pleadings and evidence, the Court finds no question that Burris' contacts with Kentucky were not "continuous and systematic." *Id.* At the hearing, Burris admitted that he had been to Kentucky two or three times to judge horse shows. He came to Gumz Farms on two occasions to visit the JV Horses. [Hr'g Tr., p. 40, Sept. 3, 2010] He occasionally called Gumz Farms to discuss the horses. [Hr'g Tr., p. 33] He admitted to receiving bills from Gumz Farms while he was Bilek's employee. [Hr'g Tr., p. 75–76] These random, fortuitous, and attenuated contacts fail to amount to the kind of "continuous and systematic" purposeful availment that is required to establish

2009) (White, J., concurring) ("I agree with Judge Rogers that personal jurisdiction must be proper as to each claim."); *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-977, 2009 U.S. Dist. LEXIS 11023, at *42 (N.D. Ohio Feb. 13, 2009) ("Personal jurisdiction is analyzed as to each claim against each Defendant."); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Therefore, the Court will look at each of Bilek's remaining claims to determine whether jurisdiction is proper.

### 1. General Jurisdiction

It is important to first note that Burris is not subject to general personal jurisdiction in Kentucky. General jurisdiction exists when a defendant's contacts with the forum state "are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). After a review of the pleadings and evidence, the Court finds no question that Burris' contacts with Kentucky were not "continuous and systematic." *Id.* At the hearing, Burris admitted that he had been to Kentucky two or three times to judge horse shows. He came to Gumz Farms on two occasions to visit the JV Horses. [Hr'g Tr., p. 40, Sept. 3, 2010] He occasionally called Gumz Farms to discuss the horses. [Hr'g Tr., p. 33] He admitted to receiving bills from Gumz Farms while he was Bilek's employee. [Hr'g Tr., p. 75–76] These random, fortuitous, and attenuated contacts fail to amount to the kind of "continuous and systematic" purposeful availment that is required to establish

general jurisdiction. Thus, for the Court to exercise personal jurisdiction, the plaintiff's injuries must have arisen from Burris' limited contacts with Kentucky.

### 2. Breach of Contract

Bilek's breach of contract claim arises from a contract between Bilek and Burris. Plaintiffs' complaint makes clear that, at the time the contract was negotiated, Burris lived in Texas. [Record No. 1, ¶ 10] The complaint further states that a condition of Burris' employment was for him to reside in California. [*Id.*, ¶ 15] In essence, this was a contract negotiated between California and Texas and performed in California. [Hr'g Tr., p. 70] There is no cognizable connection to or effect in Kentucky. The only tenuous connection the Court can draw is that one aspect of performing the contract involved managing horses in Kentucky. However, the actions which allegedly constitute breach of this contract were not aimed at Kentucky. Bilek does not claim that Burris mismanaged horses. The cause of action does not arise from Burris' activities in Kentucky. Rather, Bilek claims Burris left California earlier than contracted and left without settling debts he owed her. [Record No. 1, ¶¶ 30–31] Those actions took place entirely in California. This claim therefore fails the second prong of the *Southern Machine* test, because it does not arise from any contacts Burris had with Kentucky. To allow it to be litigated in Kentucky would offend due process. Bilek has not met her burden of showing by a preponderance of the evidence that personal jurisdiction is proper for her breach of contract claim.

### 3. Fraud

Bilek's second cause of action is for fraud. The alleged fraud occurred when Burris helped the Pirchers sell Bilek a horse which he knew to be encumbered by a $650,000 lien. [Record No. 1, ¶¶ 42–48] He also allegedly helped sell Bilek horses which had genetic defects without disclosing those defects. [*Id.*, ¶¶ 34–41] Bilek alleges that each of these misrepresentations was intended to induce Bilek to purchase the horses. However, Bilek did not produce any evidence that these fraudulent statements were made in Kentucky. Neither was evidence presented that they were aimed at Kentucky. Bilek was living in California at the time while Burris was living in Texas.

Bilek's strongest argument is that the fraud affected the value of property located in Kentucky. At the time of the sale, HFC was stabled in Kentucky, and other horses involved in the venture were eventually moved here. However, a tortious activity aimed at a different forum that tangentially causes a financial loss in Kentucky is not sufficient to impose jurisdiction. While *Southern Machine* held that the minimum contacts test *may* be satisfied either by acting or causing a consequence in the forum state, *see* 401 F.2d at 380, the Sixth Circuit "[has] not held that merely causing a consequence *always* satisfies the minimum contacts test." *Scotts Co. v. Aventis S.A.*, 145 Fed. App'x 109, 114 n.1 (6th Cir. 2005). Rather, the Court must ask "whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and if plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises." *Id.* (citation omitted). Ultimately, "the location of . . . a monetary injury is immaterial," if the suit "did not arise from a privilege the defendant exercised in the forum state." *Calphalon*, 228 F.3d at 722 (citing *LAK, Inc. v. Deer*

*Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989)). Here, the alleged fraud was not expressly aimed at Kentucky. The resulting devaluation of horses was not the result of Burris exercising privileges in Kentucky. Bilek's fraud claim does not arise from contacts Burris had with Kentucky. Therefore, personal jurisdiction over Burris for this claim is also improper.

### 4. Breach of Fiduciary Duty

Bilek likewise presented no evidence that her breach of fiduciary duty claim either arose from Burris' contacts with Kentucky or was connected to Kentucky in any way. Bilek alleges that Burris sold horses on Bilek's behalf, but kept a commission without disclosing it. [Record No. 1, ¶¶ 50–58] She presented no evidence that these sales took place in Kentucky, no evidence that the commission would have been paid in Kentucky, and no evidence that the alleged breach even had consequences in Kentucky. Unlike the alleged fraud, the breach of fiduciary duty did not cause a financial effect in Kentucky. The commission would have been owed to Bilek personally; it did not affect the value of the JV Horses. When the cause of action does not arise from Kentucky contacts and has no consequence in Kentucky, it is not proper for the Court to exercise personal jurisdiction over the defendant for that claim.

### 5. Unjust Enrichment

Bilek's unjust enrichment claim is the one claim that actually arose in Kentucky. The claim is based on contacts Burris made with Amy Gumz at Gumz Farms. Bilek alleges that Burris bred HFC to his mare, MKD, in the spring of 2009 without paying a stud fee. [Record No. 1, ¶ 62] Further, she claims that Burris left MKD and her first foal on Bilek's account at Gumz Farms without authorization. [Record No. 22, p. 9] All of this took place in Kentucky.

The claim for unjust enrichment arises from Burris' Kentucky contacts. There is no question that this injury arises from Burris' exercise of privileges within the forum state, and therefore, the Court has personal jurisdiction over Burris for this claim.

### 6. Pendent Personal Jurisdiction

Because personal jurisdiction is improper over Burris for three of the four claims Bilek asserts, she argues that the Court should exercise "pendent jurisdiction" over these claims. [Hr'g Tr., p. 50] This argument is unpersuasive for three reasons. First, the doctrine has yet to be adopted by the Sixth Circuit — and is particularly uncommon in other circuits when the case is based on diversity jurisdiction. Second, even if the doctrine were available, there has not been sufficient proof that the claims arise from a common "nexus." Finally, the exercise of pendent personal jurisdiction is always within the discretion of the Court. To the extent it would be available, or even proper, the Court declines to exercise its discretionary jurisdiction over these claims.

To begin, the Sixth Circuit has never adopted the doctrine of pendent personal jurisdiction in a controlling opinion. *See Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, No. 09-644, 2010 U.S. Dist. LEXIS 74989, at *21 (W.D. Ky. July 26, 2010) ("The Sixth Circuit has apparently never addressed this doctrine in a controlling opinion."). The only Sixth Circuit opinion to address the doctrine is Judge Rogers' partial dissent in *SunCoke Energy*. 563 F.3d at 221 (Rogers, J., dissenting). Judge Rogers provided an accurate summary of the doctrine, but declined to apply it in that case. *Id.* He was joined on this point by Judge White. *Id.* at 217 (White, J., concurring) ("I agree with Judge Rogers that personal jurisdiction must be proper as

to each claim."). Further, to the extent the doctrine is applied in other circuits, it is most often utilized in cases where jurisdiction is based on a nationwide service of process provision. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004); *see also* Linda Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1626 ("Federal courts are far more willing to adjudicate pendent counts where personal jurisdiction over the anchor count is based upon a federal nationwide service of process provision than where personal jurisdiction over the anchor count is based upon a state long-arm statute."). The Court does not find adequate, controlling precedent to adopt the doctrine of pendent personal jurisdiction in a diversity of citizenship case.

Moreover, to the extent this doctrine is recognized, it would not be proper in the present circumstances. Application of pendent jurisdiction requires "a common nucleus of operative fact between the claims." *Suncoke Energy*, 563 F.3d at 221 (Rogers, J., dissenting) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). The underlying premise of the doctrine is to avoid litigating in multiple forums claims that arise out of the same occurrence. Here, Bilek did not make an adequate showing that the unjust enrichment claim arises from a common nucleus with — or is necessarily intertwined with — the other three claims. She simply asserted that "they are all related to Mr. Burris." [Hr'g Tr., p. 23] That is not enough. Bilek's unjust enrichment claim relies on independent facts: Burris bred HFC to MKD without paying a stud fee and incurred unauthorized expenses for MKD's care. To prove those facts, Bilek would not have to rely on the same arguments or evidence that she would to prove to support fraud, breach of contract, or breach of fiduciary duty. "Trial efficiency is not necessarily aided"

by trying claims together that "arise out of separate occurrences." *Suncoke Energy*, 563 F.3d at 221 (Rogers, J., dissenting). Because Bilek's unjust enrichment claim rests on facts independent of her other claims, she has failed to show the requisite nexus to justify an exercise of pendent personal jurisdiction.

Finally, to the extent the doctrine was recognized, or proper in this case, its exercise is always left to the discretion of the court. *Oetiker v. Jurid Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977). Here, the Court declines to exercise any discretionary jurisdiction it may have over these claims. The Court has the capacity to "decide whether to retain or dismiss" the pendent claims, *Action Embroidery*, 368 F.3d at 1181, and decides to dismiss them under the circumstances presented. In sum, the Court will dismiss Bilek's claims for fraud, breach of contract, and breach of fiduciary duty because it cannot maintain personal jurisdiction over Burris for those claims.

### C. Venue

Bilek's lone remaining claim — unjust enrichment — is not proper in the Eastern District of Kentucky. The events that give rise to this claim all occurred at Gumz Farms in Union County, Kentucky. Union County is in the Western District of Kentucky. Local R. 3.1(b)(3).

Bilek makes two arguments to establish proper venue in the Eastern District. She begins by correctly asserting that venue is proper in any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2). She first claims that property which is "the subject of the action" is located in the Eastern District because Burris eventually moved his horse — MKD — back to Devitt's Farm in Shelby County. [Record No. 22, p. 22]

However, MKD is not the subject of this action. This action in no way affects the value or ownership of MKD. This action rests on the fact that MKD was improperly bred and provided for, without pay, at Gumz Farms. Those events all occurred in Union County in the Western District. No property *at issue* is in the Eastern District.

Bilek's second argument is that events which give rise to the claim occurred in the Eastern District. [Record No. 22, p. 22] She asserts that MKD's second foal was born while MKD was at Devitt's Farm. Again, however, the birth of MKD's second foal did not give rise to this cause of action. The breeding — which occurred at Gumz Farms — is what gave rise to the unjust enrichment action. [*See* Record No. 1, ¶ 62] The events that *give rise* to the cause of action occurred in the Western District of Kentucky. [Hr'g Tr., p. 75]

While this Court, sitting in Kentucky, may have personal jurisdiction over Bilek's unjust enrichment claim, it is not properly filed in the Eastern District. *See Avery Dennison Corp. v. Alien Tech Corp.*, 632 F. Supp. 2d 700, 712 (N.D. Ohio 2008) (explaining that while jurisdiction is analyzed based on contacts throughout the entire state, venue is analyzed based only on contacts within the judicial district). Despite Bilek's assertions, none of the property at issue or events giving rise to this claim occurred in the Eastern District of Kentucky. Venue is therefore improper in this district.

When a case is filed laying venue in the wrong district, the court "*shall dismiss*, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). While venue would undeniably be proper in the Western District of Kentucky, the Court finds that it would not be in the interest

of justice to transfer the case there. Most significantly, Bilek's unjust enrichment claim likely does not independently satisfy the amount in controversy requirement for diversity jurisdiction. *See* 28 U.S.C. § 1332. HFC's stud fee was $2,000. [Record No. 1, ¶ 60] It is unlikely the other care he received amounted to $73,000. Ordinarily, the plaintiff can aggregate multiple claims to reach the $75,000 threshold, "even when those claims share nothing in common besides the identity of the parties." *Everett v. Verizon Wireless Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). However, in this case, the Court would only be transferring the unjust enrichment claim. It is not in the interests of justice to order the transfer of a claim that does not independently satisfy the requirements of subject matter jurisdiction. Accordingly, Bilek's unjust enrichment claim will be dismissed pursuant to 28 U.S.C. § 1406.

### III. Conclusion

The equities in this case clearly favor the plaintiffs. However, this Court cannot exercise personal jurisdiction over Burris in Kentucky for Bilek's breach of contract, breach of fiduciary duty, or fraud claims. They do not arise from Burris' limited contacts in the forum. Bilek's unjust enrichment claim would be proper in Kentucky, but it was filed in the wrong district. And the Court finds that it is not in the interests of justice to transfer that claim. Finally, the Court declines to exercise its jurisdiction over the plaintiffs' declaratory judgment claim because it presents complex factual issues dependent on Texas law and is mirrored by a state court case. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant John Anthony Burris' Motion to Dismiss [Record No. 13] is **GRANTED**.

2. This action is **DISMISSED**, without prejudice, and stricken from the Court's docket.

This 8th day of November, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge